IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY B. COLEY,

          Plaintiff

                                        CV  09-3050-PK

                                        OPINION AND

v.                                    ORDER

MICHAEL J. ASTRUE,

          Defendant.

PAPAK, Magistrate Judge:

      Plaintiff Mary Coley filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a final decision of the Commissioner of Social Security denying her applications for

Page 1 - OPINION AND ORDER

disability insurance benefits under Title II of the Social Security Act and Supplemental Security Income disability benefits under Title XVI of the Act.  This court has jurisdiction over Coley's action pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Coley argues that the Administrative Law Judge erred when he discredited the opinions and ultimate conclusions of Coley's treating and examining physicians Dr. Margaret Gold and Doctor Grant Rawlins and substituted his own opinion for theirs, when he rejected Coley's testimony regarding her subjective pain and symptoms, when he disregarded lay witness testimony, when he concluded that the combined effect of Coley's impairments did not equal a listed impairment, and when he based his decision on the opinion of the vocational expert.  I have considered all of the parties' briefs and all of the evidence in the administrative record.  For the reasons set forth below, the Administrative Law Judge's decision is affirmed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration.  *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if

any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§

Page 3 - OPINION AND ORDER

404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, some individuals limited by physical impairments to sedentary or light work must be found disabled, depending on their age and vocational education level. 20 C.F.R. § 404, Subpt. P, App. 2. The so-called "grids" contained in Tables 1 and 2 of Appendix 2 to Subpart P of Section 404 set forth the criteria for determining

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5.

Page 4 - OPINION AND ORDER

whether such a nondiscretionary finding must be made.  In the event the grids do not mandate a finding of "disabled," the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy.  *See Bowen*, 482 U.S. at 142;  *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966.  If the Commissioner meets his burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in the national economy, the claimant is conclusively found not to be disabled.  *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966.  A claimant will be found entitled to benefits if the Commissioner fails to meet his burden at the fifth step.  *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.*, *citing Reddick v.*

Page 5 - OPINION AND ORDER

*Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  The court may not substitute its judgment for that of

the Commissioner.  *See id.*, *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.

2006); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the ALJ's

interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible

[of] more than one rational interpretation."  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## BACKGROUND

Mary Beth Coley was born on May 1, 1959.  Tr. 94.  She completed the tenth grade and

has not completed any type of special job training, trade or vocational school.  Tr. 92.  Her only

employment background is working as a waitress from 1987-1996, which she had to discontinue

due to the lack of reliable transportation.  Tr. 88.

Coley has alleged a disability onset date of July 1, 1996.  Tr. 94.  Coley contends that

"poor memory problems, pain from fibromyalgia, depression, not [being] into meeting new

people or having friends, [and] just [being] under a lot of stress" render her incapable of

employment.  Tr. 88.

The earliest medical report appearing in the administrative record dates from November

11, 1998, at which time Coley reported to her treating physician, Dr. Cory Fawcett, that she had

vomited blood the previous day.  Tr. 255.  Dr. Fawcett found a 2 centimeter hiatal hernia with a

mild escophagitis, but was unable to find a definite source of the bleeding.  *Id.*  In his report, Dr.

Fawcett stated that his "impression was that there was nothing here that we saw that could signify

bleeding."  *Id.*

On September 6, 2000, Coley went to an emergency room with complaints of chest pain

that had been present for a month.  Tr. 153.  Tests administered during this visit yielded normal results.  Tr. 154.  The ER physician, Dr. Douglas Howard, noted that Coley had been under a lot of stress due to family problems, that smoking also contributed to her chest discomfort, and that marijuana consumption may have been counterproductive and have caused her chest discomfort and an increase in anxiety.  *Id.*

On November 16, 2000, Coley complained to her treating physician, Dr. Katherine Mechling, that she had been vomiting blood for the past three years.  Tr. 193.  She also sought help in smoking cessation, and was advised to use the nicotine patch.  *Id.*  Dr. Mechling recommended that Coley stop smoking and attempt to lose weight.  *Id.*  Coley again saw Dr. Mechling on January 23, 2001, when she complained of a fever, cough, and body aches.  Tr. 192.  Dr. Mechling noted that Coley was well-nourished and well-groomed, yet appeared moderately ill.  *Id.*  Dr. Mechling assessed Coley as having a fever and prescribed phenergan with codeine. *Id.*  On February 6, 2001, Coley complained to Dr. Mechling of left shoulder pain, and was told to try heat therapy and isometric exercise.  Tr. 191.  On March 5, 2001, Coley complained of pelvic pain.  Dr. Mechling prescribed azithromycin, metronizadole, and vicodin.  Tr. 190.  On March 15, 2001, Coley again saw Dr. Mechling with complaints of itching.  Tr. 189.  On March 27, 2001, Coley telephoned Dr. Mechling and complained of itching, believing that the vicodin was causing her itching and requesting to be put on a new medication.  Tr. 188.  On April 26, 2001, Coley again saw Dr. Mechling with complaints of shoulder and pelvic pain and was advised to stay active and was praised for quitting smoking.  Tr. 187.

On May 11, 2001, Dr. Raymond Gabrill, a physician specializing in obstetrics and gynecology, performed a diagnostic laparoscopy and peritoneal biopsy on Coley, due to her

Page 7 - OPINION AND ORDER

recurrent complaints of pelvic pain.  Tr. 243.  Dr. Gabrill diagnosed Coley with recurrent pelvic

pain with minimal left pelvic peritoneal adhesions.  *Id.*  During this visit Coley denied any use of

tobacco, alcohol, or drugs.  Tr. 246.  On May 15, 2001, Coley went to the emergency room with

complaints of a fever, lower abdominal cramping, and nausea.  Tr. 151.

On May 31, 2001, Coley saw Dr. Mechling with complaints of the flu.  Tr. 186.  During

this visit, Coley asked again for help with smoking cessation and reported that she had relapsed

slightly and was smoking one to two cigarettes per day.  Tr. 186.  On June 19, 2001, Coley saw

Dr. Mechling for flu symptoms and abdominal pains.  Tr. 185.  On July 10, 2001, Coley saw Dr.

Mechling complaining of right ear pain.  Tr. 184.  On July 24, 2001, she visited Dr. Mechling for

ear pain and a yeast infection.  Tr. 183.  On November 6, 2001, Coley saw Dr. Mechling for a

headache and cramped muscles.  Tr. 182.  On November 8, 2001, Coley returned to Dr. Mechling

reporting that she continued to feel sick, had headaches, and had body aches.  Tr. 181.  On

November 26, 2001, Coley again visited Dr. Mechling with ear pain, congestion, and claims of

feeling terrible in general.  Tr. 179.  On December 13, 2001, Coley complained to Dr. Mechling

of shooting pains going down her left leg, head and neck.  Tr. 178.  On December 17, 2001,

Coley complained of headaches.  Tr. 177.  On January 3, 2002, Coley reported that she had aches

all over her body and strong muscle cramps in her legs.  Tr. 176.  During this visit, Dr. Mechling

recommended that Coley stop smoking.  Tr. 176.

On January 9, 2002, Dr. Raymond Gambrill performed a vaginal hysterectomy, right

oophorectomy, and left salpingo-oophorectomy on Coley.  Tr. 162.  Coley's postoperative course

was uneventful and she was sent home in good condition.  Tr. 159.  Coley complained of anxiety

during a January 22, 2002, appointment with Dr. Mechling.  Tr. 174.  On February 11, 2002,

Coley again saw Dr. Mechling with complaints of pain during urination.  Tr. 173.  Coley
complained of a rapidly growing rash on her forehead and nose on February 22, 2002.  Tr. 172.
On February 28, 2002, Coley returned to Dr. Mechling complaining of anxiety.  Dr. Mechling
diagnosed Coley with general anxiety and recommended stress reduction and more physical
activity.  Tr. 171.  On March 12, 2002, Coley again saw Dr. Mechling with medical concerns
relating to fatigue.  Tr. 170.  Dr. Mechling diagnosed Coley with fatigue and reported Coley's
unemployment as a contributing factor to her stress.  Tr. 170.  Dr. Mechling recommended that
Coley engage in a graded exercise program and follow good nutritional habits.  Dr. Mechling
further recommended that Coley consider getting a job or some sort of out-of-the-house
responsibility.  On April 22, 2002, Coley complained to Dr. Mechling of chest pain and painful
urination.  Tr. 168.  Dr. Mechling diagnosed Coley with rib pain, cystitis, anxiety, tobacco abuse,
fatigue, and subjective tinnitus.  Tr. 168.  The medical report stated that Coley had taken up
hoola hooping to lose weight, but was told this was a bad idea.  Dr. Mechling recommended that
Coley do only normal exercises, engage in back smart lifting techniques, and quit smoking
cigarettes.  Tr. 168.

On August 8, 2002, Coley was examined by rheumatologist Dr. Rudy Green, complaining
of numbness, nausea, and myalgia.  Tr. 211.  During this interview Dr. Green noted that Coley
was quite depressed and that she cried during the interview.  Tr. 211.  Dr. Green assessed Coley
with myalgia, arthralgia, muscle weakness and severe depression.  Tr. 212.

On August 9, 2002, Coley was seen by treating physician Dr. Donna Mullarkey, a
specialist in family medicine, to undergo a mammogram.  Tr. 242.  The mammogram came back
negative.  *Id.*  On August 29, 2002, Coley again visited Dr. Green who noted that she was feeling

considerably better with medication, yet continued to have some arthralgia.  Tr. 210.  Dr. Green stated that he believed Coley had fibromyalgia, but also noted that a lot of her symptoms "were exacerbated by depression and [were] much better since she has been on Paxil."  Tr. 210.  Dr. Green recommended that Coley join an aerobic exercise program and continue taking her medications.  Tr. 210.

Coley saw Doctor Yung Kho, a neurologist, on September 24, 2002.  Tr. 203.  Coley complained of numbness from her right elbow to her hand, and Dr. Kho found evidence of mild right-side carpal tunnel syndrome.  Tr. 203.

On October 14, 2002, Coley saw Dr. Mullarkey to have audiology tests conducted on her ears.  Tr. 205.  The results showed Coley's hearing was within normal limits, and Dr. Mullarkey opined that Coley did not present a communicational type of hearing deficit.  Tr. 205.

Coley saw her treating surgeon, Dr. Mark Deatherage, on January 15, 2003.  Dr. Deatherage performed an esophagogastroduodenoscopy with biopsy and diagnosed Coley with gastroesophageal reflux disease.  Tr. 219.  On April 7, 2003, Dr. Deatherage performed a Laparoscopic Nissen fundoplication on Coley in response to her gastroesophageal problems.  Tr. 227.

Examining physician Dr. Carlos Marchinini, a specialist in internal medicine, saw Coley on May 20, 2003, to perform a pulmonary function test.  Tr. 224.  The test was performed in response to Coley's complaints of shortness of breath.  Tr. 224.  Dr. Marchini concluded that Coley had normal spirometry, normal diffusion capacity, normal lung volumes, and normal airway resistance.  Tr. 224.

Coley saw psychologist Dr. Ronald Gardner on May 6, 2004, for counseling regarding

Page 10 - OPINION AND ORDER

management of her fibromyalgia, anxiety, and depression.  Tr. 296.  Dr. Gardner noted that

"Mary [was] a mildly obese 45 year old who [was] oriented as to time, place and person."  Tr.

296.  Coley reported some memory lapses and presented no suicidal ideation.  Tr. 296.  Dr.

Gardner recommended that Coley exercise at least three times a week for a duration of fifteen to

twenty minutes, and seek counseling.  Tr. 296.

Family physician Dr. Beverly Steinman saw Coley on September 13, 2004, because Coley

was having trouble getting her medications filled.  Tr. 290.  Dr. Steinman noted that Coley

appeared sad and somewhat irritated.  Tr. 290.  Coley was assessed with depression and agitation

likely associated with her lack of medication.  Tr. 290.  On September 28, 2004, Coley returned

to Dr. Gardner with reports of increased symptoms associated with her fibromyalgia and a sciatic

nerve problem.  Tr. 287.  Dr. Gardner noted, however, that Coley was thinking logically and that

she did not appear as depressed as she had during previous visits.  Tr. 290.  Dr. Gardner

recommended that Coley try to get exercise on the days that she was not experiencing pain.  Tr.

290.

Coley filed for benefits on September 10, 2004.  Tr. 93.  In her disability report, Coley

claimed that memory loss, depression and fibromyalgia limited her ability to work.  Tr. 87.  On

November 12, 2004 Coley underwent a physical residual functional capacity assessment to

determine her ability to engage in work-related activities.  Tr. 349.  The assessment indicated that

Coley was able to occasionally lift twenty pounds and could frequently lift ten pounds, that she

could stand or walk about six hours in an eight hour workday, she could sit about six hours in an

eight hour workday, and that she had unlimited restrictions on her ability to push or pull.  Tr.

350.  Coley could frequently climb, scoop, kneel, crouch, and crawl, and could occasionally

Page 11 - OPINION AND ORDER

balance.  Tr. 351.  The functional capacity assessment noted that Coley was in pain, but after

performing testing and reviewing her entire medical record found that she was capable of

performing light work.  Tr. 357.

On November 22, 2004, the Social Security Administration advised Coley that she did

not qualify for benefits.  Tr. 56.  Coley appealed the Administration's adverse decision on

January 13, 2005.  Tr. 125.  The Administration rejected Coley's appeal.

On May 31, 2005, Coley saw physician's assistant Joseph Patton in connection with a

spider bite and pain associated with fibromyalgia.  Tr. 417.  During this visit, Patton noted that

Coley was tearful and overweight, but otherwise looked well and was able to move around easily.

Tr. 417.  Coley told Patton that she was still smoking a pack of cigarettes daily.  Tr. 417.  On July

26, 2005, Coley saw family physician Dr. Lucinda Kolo for a puncture wound on her left thigh.

Tr. 411.  The puncture wound was caused by an S-hook on the end of a bungee cord and was

noted to be a deep wound.  Tr. 411.  Dr. Kolo released Coley with instructions on how to treat

the wound.  Tr. 411.

Coley filed a second appeal of the Administration's denial of benefits on June 1, 2005.

Tr. 134.  The Administration rejected Coley's appeal.  Coley appealed a third time on July 12,

2005, Tr. 141, and the Administration again denied the appeal.

On November 8, 2005, Coley saw her treating family physician Dr. Margaret Gold for an

ankle sprain.  Tr. 402.  Dr. Gold noted moderate swelling and that Coley reported that she was

using Vicodin and Percocet three times a day to treat the pain.  *Id.*  Dr. Gold performed a

functional limits assessment of Coley's ability to engage in work and classroom activities on

January 11, 2006.  Tr. 363.  Dr. Gold concluded that Coley was limited from engaging in

Page 12 - OPINION AND ORDER

classroom activities, job readiness classes, job searching, work experience, and work in general

for a period of sixty days.  Tr. 363.  Dr. Gold noted that Coley had acute anxiety disorder and a

history of panic disorder.  Tr. 401.  Dr. Gold reported that Coley was very upset and agitated

because she had experienced a difficult month.  Tr. 401.  Coley had separated from her spouse,

her car had broken down and a water pump broke.  Tr. 401.  In addition to her difficult month,

Dr. Gold noted that Coley was responsible for everything around the home, including splitting

wood and caring for her young son.  Tr. 401.

Coley saw physician's assistant Joseph Patton on January 31, 2006, with complaints of a

sore throat.  Tr. 400.  Patton noted that Coley looked well except for being overweight and

moved around easily.  Tr. 400.

Dr. Gold completed another functional limits assessment for Coley on April 14, 2006.

Tr. 362.  Dr. Gold assessed Coley as being limited from engaging in job readiness classes, job

searching, work experience, and general work for ninety days, but cleared her for classroom

activities.  Tr. 362.  Dr. Gold planned to permanently discontinue anxiolytics and muscle

relaxers, as she found that Coley's use of these drugs was becoming chronic and contributing to

her decreased sensorium, loss of focus, confusion, and hypersomnia.  Tr. 397.  Dr. Gold  referred

Coley to Dr. Villanueva for neuropsychiatric testing and evaluation for any type of underlying

psychiatric diagnoses to assist her disability claim, Tr. 397, but Coley did not go to see Dr.

Villanueva until after the initial hearing with the ALJ.  Dr. Gold's treatment notes indicate that

Coley had lengthy subjective complaints regarding her depression and pain.  Tr. 398.  However,

Dr. Gold noted that Coley was moving all of her extremities well, was able to get on and off the

exam table without any difficulty, and had a normal gait.  Tr. 398.  Dr. Gold diagnosed Coley

with chronic pain syndrome related to fibromyalgia, stating the Coley had a "complex symptomatology" and cleared her for classroom activities only.  Tr. 398.

On May 30, 2006 the Administration's examining psychologist, Dr. Grant Rawlins, performed a mental residual functional capacity assessment of Coley.  Tr. 365.  Dr. Rawlins found that Coley had marked limitations in both her ability to sustain concentration and persistence and engage in social interaction.  Tr. 366.  Dr. Rawlins reported that Coley was at the time taking Paxil, Lipitor, Propanolol, Pranolol, Estradiol, Peroxetine, Trazadone, Atavan, Flexoril, and medical marijuana.  Tr. 370.  Dr. Rawlins noted that Coley was capable of doing housework, cooking her own meals, doing her own shopping, maintaining her hygiene, managing her finances, using a telephone, and driving in the community.  Tr. 373.  Dr. Rawlins noted that low scores on Coley's intellectual functioning tests appeared to be reduced due to her physical discomfort, in addition to the side effects of her medication, including medical marijuana.  Tr. 375.  The MMPI-2 Chronic Pain Program Interpretive Report's validity profile indicated that the results of the test should be interpreted with caution, reflecting the possibility of exaggeration.  Tr. 376.  Dr. Rawlins stated that exaggeration couldn't be ruled out, but felt that the results were generally consistent with other testing and observed behavior.  Tr. 376.  Finally, Dr. Rawlins found that Coley's perception of her physical pain was exaggerated.  Tr. 377.

Dr. Gold filled out a third functional limits assessment for Coley on July 24, 2006.  Tr. 381.  In her assessment, Dr. Gold opined that Coley could not engage in classroom activities, job readiness classes, job searching, work experience, or work in general for ninety days.  Tr. 381.  Dr. Gold stated that Coley was emotionally disabled, had psychiatric breakdown issues, and fibromyalgia.  Tr. 381.  On July 25, 2006, Dr. Gold saw Coley for a refill of her medications.  Tr.

Page 14 - OPINION AND ORDER

395.  Dr. Gold stated that Coley felt very disabled and was filing for disability benefits.  Tr. 395.

Dr. Gold diagnosed Coley with chronic fibromyalgia and mood disorder.  Tr. 395.

Coley returned to Dr. Mullarkey on September 7, 2006, for a follow up visit in connection with her fibromyalgia.  Tr. 393.  Coley reported sleep problems, pain associated with winterizing her house, and problems with memory loss.  Tr. 393.  Dr. Mullarkey assessed Coley with fibromyalgia and depression/anxiety.  Tr. 393.  Dr. Mullarkey recommended continued medication and counseling.  Tr. 393.  On September 14, 2006, Coley returned to Dr. Mullarkey for a follow up.  Tr. 390.  Dr. Mullarkey noted that Coley was still smoking a pack of cigarettes daily.  Tr. 390.  Dr. Mullarkey also noted that Seroquel was helping solve Coley's sleeping problems.  Tr. 389.  On September 21, 2006, Coley again met with Dr. Mullarkey.  Tr. 387.  During this visit Coley stated that her mood was good, but that she was tired and was going to cancel a counseling appointment with Dr. Gardner.  Tr. 387.

On May 16, 2005, Coley requested a hearing in front of an Administrative Law Judge.  Tr. 47.  Coley's request was granted and an initial hearing before Administrative Law Judge Stewart took place in Medford, Oregon, on November 8, 2006.  Tr. 473.  The ALJ felt that Dr. Rawlins' assessment was inadequate and requested that Coley obtain a consultative examination from a different doctor.  Tr. 488.

Administration examining psychologist Dr. Michael Villanueva conducted an assessment of Coley's mental ability to do work-related activities on January 9, 2007.  Tr. 431.  Dr. Villanueva found no limitations regarding Coley's ability to understand and remember short and simple instructions, carry out short and simple instructions, understand and remember detailed instructions, and carry out detailed instructions.  Tr. 431.  Dr. Villanueva found only slight

Page 15 - OPINION AND ORDER

limitations in Coley's ability to make judgments on simple work-related decisions, interact appropriately with supervisors, and respond appropriately to changes in a routine work setting. Tr. 432. Dr. Villanueva reported moderate limitations in Coley's ability to interact appropriately with the public, respond appropriately to work pressures in a usual work setting, and interact appropriately with co-workers. Tr. 432. During this assessment, Coley stated that her daily activities included: caring for her son, feeding animals, cleaning the house, performing other household tasks, buying groceries, preparing meals, laundry, and paying bills. Tr. 434. Coley informed Dr. Villanueva that she consumed marijuana three to four times a day, in addition to smoking a pack of cigarettes daily. Tr. 434. Dr. Villanueva found that many of Coley's difficulties appeared secondary to her anxiety and depression. Tr. 439. Dr. Villanueva conducted standardized tests but noted that Coley's effort fell below the acceptable cut off range and that such a performance suggested that her low results may not have represented her optimal abilities. Tr. 437. Dr. Villanueva concluded that Coley was overly focused on her disabilities and was able to maintain a household without significant difficulty. Tr. 439.

The ALJ denied Coley's claim on April 7, 2007. Tr. 44. On April 23, 2007, Coley timely requested review of the ALJ's decision. Tr. 19. The Appeals Council denied the request for review on April 24, 2007 . Tr. 7. In consequence, the ALJ's decision became the Secretary's final order for purposes of judicial review. *See* 20 C.F.R. § 422.210(a). This action followed.

## SUMMARY OF ALJ'S FINDINGS

In the first step of the five-step sequential evaluation process, the Administrative Law Judge found that a decision regarding whether Coley had engaged in substantial gainful activity since her alleged disability onset date of July 1, 1996 could not be reached. Tr. 28. Coley was

unable to explain recorded earnings of $5,560 in 2004 and $7,742 in 2005.  Tr. 28.  While

Coley's earning on average fell below the monthly countable earnings under the SGA regulations,

a final conclusion could not be reached on the current record, because the number of months she

worked was unknown.  Tr. 28.  In consequence, the ALJ properly assumed that Coley had not

engaged in substantial gainful activity since July 1, 1996.  The ALJ therefore proceeded to the

second step of the analysis.

At the second step in the analysis, the ALJ found that Coley's medical impairments of

fibromyalgia, possible carpal tunnel syndrome, depression, anxiety disorder, chronic pain

syndrome, history of questionable syncopal episodes, cannabis abuse, and probable personality

disorder were "severe" for purposes of the benefits analysis.  *Id.*  The ALJ therefore proceeded to

the third step of the analysis.

At the third step of the analysis the ALJ found that Coley did not have an impairment or

combination of impairments that equaled one of the listed impairments in 20 C.F.R. Part 404,

Subpt P, App. 1.  Tr. 29.  The ALJ therefore properly conducted an assessment of Coley's

residual functional capacity.  Tr. 29.  Specifically, the ALJ found that Coley had "the residual

functional capacity to occasionally lift and carry 20 pounds, frequently lift and carry ten pounds,

stand and/or walk for six hours in an eight hour day, sit for six hours in an eight hour day, and do

unlimited pushing and pulling.  She can occasionally climb ladders, ropes, and scaffolds.  She is

unable to consistently follow detailed instructions.  She is unable to consistently interact

appropriately with the public except for occasional or superficial public contact.  She is unable to

consistently interact with co-workers in close, ongoing, cooperative teamwork endeavors."  Tr.

29.  In reaching these conclusions, the ALJ considered all of the objective medical evidence in

Page 17 - OPINION AND ORDER

the record, the claimant's activities, the frequency and intensity of the pain, factors that

precipitate and aggravate the symptoms, the type, dosage and effectiveness of medication, the

treatment/medication received, any measures used to relieve pain, and other factors concerning

the claimant's functional limitations and restrictions due to pain or other symptoms.  Tr. 30.

At the fourth step of the five step process the ALJ found that Coley was unable to

perform any of her past relevant work.  Tr. 43.

At the fifth step, the ALJ concluded that in light of Coley's age, education, work

experience, and residual functional capacity there were jobs that exist in significant numbers in

the national economy that Coley could perform.  Tr. 43.  Relying in part on the testimony of an

objective vocational expert, the ALJ cited several examples of unskilled, light-exertional jobs

that Coley could perform despite the limitations in her residual functional capacity including:

hand presser (light unskilled work), decorator of leather products (light unskilled work), and

assembler of small products (light unskilled work).  Tr. 44.  The ALJ found that there were a

significant number of positions available in both the United States and the regional economy for

these jobs.  Tr. 44.  Based on the finding that Coley could perform a significant number of jobs in

the regional and national economy, the ALJ found that Coley had not been under a disability, as

defined in the Social Security Act, from July 1, 1996, through the date of the decision.  Tr. 44.

## ANALYSIS

### I.    Medical Opinions

The opinion of the treating physician is not necessarily conclusive on the issue of

disability.  *See Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  When there is conflicting

medical evidence, the ALJ must determine credibility and resolve the conflict.  *See Matney v.*

*Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Physicians with the most significant clinical

relationship with the patient generally are given more weight than physicians with lessor

relationships.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Several factors determine

the weight the ALJ should give to a physician's opinion, including the length of the treatment

relationship, the frequency of examination, the amount of evidence that supports the opinion, the

quality of explanation provided, and the consistency of the medical opinion with the record as a

whole.  *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).

An ALJ can reject a treating physician's uncontradicted medical opinion only with "clear and

convincing reasons."  *Id.* at 830-831.  When the treating physician's opinion has been

contradicted, however, it may be rejected for "specific and legitimate reasons that are supported

by substantial evidence in the record."  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155,

1164 (9th Cir. 2008).  This can be done by setting out a detailed and thorough summary of the

facts, providing an appropriate interpretation thereof, and making findings.  *See Megallanes v.*

*Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### A.   Opinion of Treating Physician Dr. Gold

Dr. Margaret Gold was Coley's treating physician for fibromyalgia pain, depression,

anxiety, insomnia/oversleeping problems, hyperlipidemia, spider bites, and other injuries, from

September 2005 through July 2006.  Tr. 362-363, 380-385, 386-423.  On January 11, 2006, Dr.

Gold stated that Coley felt that she could not cope with household responsibilities, including

wood splitting and caring for her son.  Tr. 401.  Dr. Gold filled out a functional limits

assessment, in which she opined that Coley was unable to participate in classroom activities, job

readiness classes, job searching, work experience, and employment for sixty days, due to

physical limits associated with fibromyalgia and mental limits from acute anxiety disorder. Tr. 363. The ALJ gave Dr. Gold's assessment little weight, finding that it was inconsistent with Coley's treatment notes and lacked details about what the specific limitations were or how Coley's impairments translated into particular limitations. Tr. 36.

On April 14, 2006, Dr. Gold completed another functional limits assessment in which she stated that Coley was not able to qualify for any job readiness at the time, but could attend parenting classes and life skills classes, and that these limitations were in place for ninety days. Tr. 382. Dr. Gold assessed Coley as having "chronic pain syndrome related to fibromyalgia" and attributed Coley's limitations to a "complex symptomatology." Tr. 382. Dr. Gold stated her opinion that Coley was "not able to work and that she would do well with permanent disability." Tr. 383. The ALJ rejected this assessment and found to the contrary that Coley's motivation problems and level of activity were not consistent with full disability. Tr. 37. In addition, the ALJ found Dr. Gold's treatment notes did not address why she felt Coley was disabled or what she felt Coley could not do in terms of work activity. Tr. 37. Lastly, the ALJ concluded that Dr. Gold's conclusion about Coley's disability was not supported by the record and therefore was given little weight. Tr. 37.

On July 24, 2006, Dr. Gold completed a final functional limitations assessment in which she found that Coley was unable to participate in classroom job readiness classes, job search or work experience activities, and employment. Tr. 381. Dr. Gold assessed Coley as being emotionally disabled, having psychiatric breakdown issues and fibromyalgia, and set the limits for ninety days. Tr. 381. The ALJ concluded that there were "scant treatment notes to support" Dr. Gold's assessment, and further concluded that the functional limitations assessment appeared

Page 20 - OPINION AND ORDER

to be based solely on Coley's subjective complaints.  Tr. 38.

The medical opinion of Dr. Gold was contradicted in January 2007 by examining psychologist Dr. Villanueva, who saw Coley for a consultative neuropsychological exam.  Tr. 39. Dr. Villanueva found that Coley's cognitive examination suggested that in the areas of language, visuospatial abilities, and executive functioning, her abilities were grossly intact.  Tr. 438.  Dr. Villanueava's testing yielded results in the normal limits, except for low scoring in memory.  Tr. 438.  However, Dr. Villanueva cautioned against accepting low testing results as representative of Coley's optimal abilities, because Coley's effort measured below the acceptable cut-off range in an empirical measurement.  Tr. 437.  Coley's mental ability to engage in work-related activities tested in the slight to moderate range with no marked limitations.  Tr. 431.  Dr. Villanueva did not find any pain behavior or signs of psychosis.  Tr. 437. A non-treating physician's opinion can suffice to establish a conflict among medical opinions, although it does not by itself constitute substantial evidence to justify the rejection of a treating physician's opinion.  *See Widmark v. Barnhart*, 454 F.3d 1063, 1066-1067 (9th Cir. 2006).  Thus the ALJ must have had specific and legitimate reasons for rejecting Dr. Gold's opinion.  *See Carmickle*, 533 F.3d at 1164.

The ALJ gave little weight Dr. Gold's January 2006 opinion stating that Coley was unable to do classroom activities, job readiness classes, job search, work experience, or work, due to physical and emotional limitations.  The ALJ found that Dr. Gold's assessment was not supported by the treatment notes and that Dr. Gold failed to provide details about what the specific limitations were, or how Coley's impairments translated into particular limitations.  Tr. 36.  An ALJ may properly reject a treating physician's opinion on the ground that it lacks support in the treatment notes.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Dr. Gold's

treatment notes for the January 2006 Functional Limits Assessment explain that Coley was

having a traumatic month, in that her husband had left her, her car had broken down, and a water

pump had malfunctioned.  Tr. 401.  The treatment notes indicate that Coley was physically

capable of performing, and was responsible for, all of her household responsibilities, including

splitting wood and caring for her son.  Tr. 401.  The ALJ correctly found that the physical tasks

performed by Coley, which Dr. Gold noted in the report, were not consistent with the description

of Coley as a disabled individual who was incapable of both classroom and employment

activities.  Therefore, the ALJ properly declined to give Dr. Gold's January 2006 opinion

conrolling weight.

An ALJ is not required to follow a treating physician's opinion that is conclusory and

brief, and not supported by clinical findings.  *See Magallanes v. Bowen*, 881 F.2d 747, 752 (9th

Cir. 1989).  A medical opinion offered in support of an impairment must include symptoms and a

diagnosis.  *See Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005).  Dr. Gold's January

2006 Functional Limits Assessment stated that Coley had "emotional and physical limitations."

Tr. 363.  However, Dr. Gold failed to identify any physical symptoms that contributed to the

limitations. Dr. Gold's opinion also failed to explain how the mental impairments contributed to

the listed  limitations.  The ALJ was therefore justified in rejecting Dr. Gold's assessment,

because it was brief, conclusory, and not supported by treatment notes.

The ALJ concluded that Dr. Gold's April 2006 assessment of Coley's employment and

classroom abilities were not supported by the record and did not give the opinion significant

weight in his disability determination.  Tr. 37.  In addition, the ALJ noted that the medical

opinion failed to address why Dr. Gold concluded that Coley was disabled or what Dr. Gold

believed Coley could not do regarding employment activity.  Tr. 37.  An ALJ is not required to

accept a treating physician's opinion that is conclusory, brief, and unsupported by the record.  *See*

*Magallanes,* 881 F.2d at 752.  However, even when a treating physician's opinion is not given

controlling weight due to substantial contradicting evidence in the record, the opinion still must

be weighed using the factors set forth in 20 C.F.R. § 404.1527.  *See Lingenfelter v. Astrue*, 504

F.3d 1028, 1038 (9th Cir. 2007).  Factors which the ALJ must consider include:  the length and

frequency of the treatment relationship, the nature and extent of the treatment relationship, the

relevant evidence provided to support the medical opinion, the consistency of the opinion to the

record as a whole, the physician's specialization, and other relevant factors.  *See* 20 C.F.R. §

404.1527 (d)(2)(i), (ii), (3), (4), (5) and (6).  In support of the his rejection of Dr. Gold's April

assessment, the ALJ pointed to the opinion's inconsistency with the record, the lack of evidence

supporting the opinion, and the conclusory nature of the opinion.  Tr. 37.  In his overall

consideration of Dr. Gold's opinions regarding Coley's disability, the ALJ considered the nature

and extent of the treatment relationship and the length and frequency of treatment.  The ALJ took

all of the required factors into account and properly rejected Dr. Gold's April 2006 disability

assessment.

In July 2006, Dr. Gold found that Coley was unable to pursue employment and classroom

activities due to being emotionally disabled with psychotic breakdown issues and fibromyalgia.

Tr. 381.  The ALJ rejected the finding that Coley's impairments inhibited her ability to work, on

the grounds that Dr. Gold based his opinion on Coley's subjective complaints.  Tr. 38.  An ALJ

may reject a treating physician's opinion that is premised on a less-than-credible statement made

by a claimant.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Page 23 - OPINION AND ORDER

Dr. Gold's July 2006 medical opinion describes Coley's subjective complaints as suffering from fibromyalgia-related pain and her realization that she was emotionally disabled.  Tr. 395.  These subjective symptoms match the specific limitations set forth in Dr. Gold's July 2006 Functional Limits Assessment, suggesting that the assessment was based on Coley's subjective complaints.  Tr. 381.  The ALJ properly discredited Coley's subjective complaints, however, and found her to be overly focused on obtaining disability benefits.  Tr. 43.  The ALJ provided a specific and legitimate reason justifying his rejection of Dr. Gold's July 2006 opinion.

### B.    The Opinion of Grant Rawlins, Ph.D.

Dr. Rawlins is a clinical psychologist who examined Coley in May of 2006.  Dr. Rawlins assessed Coley with mild to moderate limitations in her ability to perform normal activities of daily living, and with marked limitations in social functioning, concentration, persistence, and pace.  Tr. 367.  Dr. Rawlins also assessed Coley with a GAF score of 40.  Tr. 378.  The MMPI-2 test validity profile indicated that the results should be interpreted with caution, reflecting the possibility of exaggeration.  Tr. 376.  While Dr. Rawlins stated that exaggeration could not be ruled out, in his opinion the results were generally consistent with other tests and observed behavior.  Tr. 376.  Dr. Rawlins accepted Coley's report that she suffered from some physical impairments, but opined that Coley's perception of these issues was exaggerated.  Tr. 377.  With regard to Coley's subjective complaints of physical pain, Dr. Rawlins opined that outright malingering was unlikely.  Tr. 377.

Dr. Villanueva's January 2007 assessment of Coley's mental ability to do work-related activities showed only slight to moderate limitations regarding her mental ability to do work related activities on a sustained basis.  Tr. 431.  Dr. Villanueva found that most of Coley's

difficulties may have been secondary to her anxious state and depression.  Tr. 439.  Dr.

Villanueva reported that Coley's use of medical marijuana likely contributed to her anxiety and

depression.  During the assessment Coley stated that she consumed marijuana about three to four

times a day.  Although Dr. Villanueva did note low memory testing, he did not believe that the

low scores reflected Coley's true abilities, due to Coley's apparent failure to make an acceptable

effort to perform at a high functional level.  Tr. 437.

Coley asserts that the ALJ improperly rejected the opinion and conclusion of examining

psychologist Dr. Rawlins concerning the severity of her impairments, without providing clear

and convincing reasons or specific and legitimate reasons supported by substantial medical

evidence in the record for doing so.  Specifically, Coley asserts that the ALJ incorrectly rejected

Dr. Rawlins' opinion based on an incorrect conclusion that Coley was exaggerating during

testing. The ALJ noted that Coley's residual functional capacity included the limits referred to by

both Dr. Villanueva and Dr. Rawlins.  Tr. 42.  The ALJ, however, noted that Coley's daily

activities were inconsistent with marked limitations.  Tr. 42.  Thus, I must evaluate whether the

ALJ had specific and legitimate reasons supported by substantial evidence to reject Dr. Rawlins'

opinion that Coley had marked limitations.

The ALJ may consider that limitations assessed by a physician are inconsistent with the

claimant's level of daily activity in discrediting the opinion.  *See Rollins v. Massanari*, 261 F.3d

853, 856 (9th Cir. 2001).  The ALJ found that Coley's reported activities were inconsistent with

the marked limitations set forth in Dr. Rawlins' report.  Tr. 42.  By her own report, Coley's

limitations did not prevent her from carrying out all of the responsibilities for her household,

raising her son, driving, and splitting wood.  Tr. 29.  I find that the ALJ relied upon specific and

legitimate reasons supported by the substantial evidence of Coley's daily activity in the record when he rejected the marked limitations set forth in Dr. Rawlins' assessment.

Moreover, the ALJ cited both Dr. Villanueva's disability assessment and a 2004 mini mental status evaluation as being inconsistent with Coley's alleged marked limitations and GAF score of 40. Tr. 42. In the 2004 mini mental status examination, Coley tested in the average range considering her age and educational level, although she had some difficulty with the memory exercises. Tr. 295. Dr. Villanueva's assessment also contradicted the marked limitations and GAF score in Dr. Rawlins' assessment. When presented with conflicting medical opinions in a social security disability determination, it is the ALJ's role to determine credibility and resolve the conflict. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). As a general rule, more weight is given to the opinion of a treating doctor than the opinion of a non-treating physician. *See Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995). As Dr. Villanueva was Coley's treating physician and Dr. Rawlins was merely examining Coley for the assessment, the ALJ was required to give more deference to Dr. Villanueva's opinion than to Dr. Rawlins' opinion.

Coley argues that the ALJ erred when he discredited the marked limitations found in Dr. Rawlins' assessment, on the basis that there was noted exaggeration on the test. The ALJ noted that "Dr. Rawlins found GAF 40 and marked limitations, though he noted exaggeration on testing." Tr. 42. Dr. Rawlins opined that the MMPI-2 validity profile indicated that the results should be interpreted with caution, reflecting the possibility of exaggeration. Tr. 376. However, Dr. Rawlins noted that although exaggeration could not be ruled out, he felt that the results were generally consistent with other testing and observed behavior. *Id.* In addition, Dr. Rawlins

Page 26 - OPINION AND ORDER

opined that Coley's perception of her physical impairments was exaggerated, though outright malingering regarding her subjective representation of these impairments was unlikely. Tr. 377. An exaggerated negative personal evaluation by the claimant regarding herself or her life is not evidence of malingering. *See Clark v. Astrue*, CV-09-120, 2010, WL 457357 at *5 (E. D. Wash., Feb. 5, 2010). The ALJ's decision to discredit Dr. Rawlins' opinion on the basis of noted exaggeration was therefore erroneous. However, the error was necessarily harmless, because the ALJ provided other specific, legitimate reasons supported by substantial evidence to reject Dr. Rawlins' opinion. As long as there is substantial evidence supporting the ALJ's decisions, and the ALJ's error does not affect the ultimate finding that the complainant is not disabled, the error is harmless. *See Carmickle,* 533 F.3d at 1162. The ALJ therefore properly discredited Dr. Rawlin's finding of marked limitations and the GAF score of 40.

## II.    ALJ Opinion

Coley argues that the ALJ improperly substituted his own opinion for that of her treating and examining medical sources by making his own independent findings and speculative inferences from the medical record. Specifically, Coley alleges that the ALJ improperly substituted his opinion for that of Dr. Rawlins in giving little weight to the May 2006 test results. In addition, Coley argues that the ALJ had a duty to develop the record by contacting Dr. Rawlins with his questions and concerns regarding perceived inconsistencies between Dr. Rawlins' assessment and previous tests.

An ALJ may not arbitrarily substitute his own medical judgment for that of a physician. *See Hoffman v. Astrue*, No. C09-5252RJB, 2010 WL 1138340, at *8 (W.D. Wash., Feb. 8, 2010). Here, however, the ALJ did not arbitrarily reject Dr. Rawlins' medical opinion, but instead

Page 27 - OPINION AND ORDER

pointed to other objective evidence in the record that was inconsistent with Dr. Rawlins' opinion. This was "wholly within the sphere of the ALJ's responsibilities." *See id.* The ALJ is the final arbitrator with respect to resolving ambiguities in the medical evidence. *See Tommasseti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). As the inclusion of the ALJ's personal observations does not render the decision invalid, the ALJ did not err in so doing. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Coley further argues that the ALJ's summary omitted Dr. Gardner's September 16, 2004, medical record. Coley asserts that Dr. Gardner recognized a connection between Coley's gradual loss of function caused by fibromyalgia pain and depression and her difficulties with concentration. Dr. Gardner's report indicated that Coley subjectively reported a gradual loss in functioning due to fibromyalgia. Tr. 289. Dr. Gardner also noted that Coley's concentration issues apparently were a function of both her depression and fibromyalgia. However, the ALJ is not required to discuss every piece of evidence on record, as long as his decision is supported by substantial evidence. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Further, even if the ALJ did err in omitting to discuss Dr. Gardner's opinion in his decision, the error was necessarily immaterial to the ultimate disability determination, as the ALJ noted moderate limitations on Coley's social function, concentration, persistence and pace. The ALJ clearly evaluated the effect of Coley's impairments to find moderate limitations. *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990).

In Social Security cases, the ALJ has a "special duty to fully and fairly develop the record and assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, Coley claims that the ALJ had a duty to contact Dr. Rawlins over

inconsistencies between the 2004 mini mental status exam and Dr. Rawlins' 2006 assessment. The ALJ's duty to develop the record is only triggered when there is ambiguous evidence or the record is inadequate to permit the ALJ to make a decision. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). In the present case, the record is not devoid of medical opinions and is thus adequate without further development. *See Mason v. Barnhart*, No. 01-35889, 2003 WL 1793283 (D. Or., Mar. 26, 2003).

If the ALJ needs to know the basis for a physician's opinions, then he has a duty to conduct an appropriate inquiry and further develop the record. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). When rejecting a physician's opinion, however, the ALJ only has a duty to re-contact that physician if he finds the physician's medical record insufficient or so ambiguous as not to permit the ALJ to make any disability determination. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not have a duty to contact physicians prior to rejecting their opinions, since the ALJ, with support of the record, found evidence sufficient to permit a disability determination). Here, the ALJ did not have a duty to contact Dr. Rawlins prior to rejecting his opinion, as the extensive medical record was more than sufficient to permit the ALJ to make a disability determination.

The ALJ kept the record open after concluding the initial hearing and allowed Coley to supplement the record with Dr. Villanueva's opinion. Even if the ALJ had a duty to develop the record, such a duty would thereby have been discharged. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

## III. Claimant Credibility

In a Claimant Pain Questionnaire completed on September 1, 2004, Coley wrote that

almost everything in her body hurt on a daily basis.  Tr. 107.  At the hearing before the

Administrative Law Judge on November 8, 2006, Coley testified that she had fibromyalgia,

constant headaches, memory loss, and numbness in her hands from arthritis and carpel tunnel, Tr.

476, that she had depression and anxiety, Tr. 477, that she had pain in her entire body and

headaches all the time, Tr. 478, that she experienced bad chest pains, Tr. 479, that she had carpel

tunnel in her arms and hands, Tr. 479, that the pain in her hands was too strong for employment,

she was unable to sit for long periods, that she constantly forgot things, Tr. 482, and that she

slept for two to three days at a time a couple times a month, Tr. 497.  Coley argues, without

specificity, that the ALJ rejected this evidence without stating clear and convincing reasons for

doing so.

    In determining whether to accept a claimant's subjective testimony, an ALJ must perform

a two-stage analysis.  *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  At the first

stage, the ALJ is required to consider whether the claimant produced objective medical evidence

of an impairment or impairments and demonstrated that the impairment or combination of

impairments could reasonably be expected to produce some degree of the alleged symptoms or

pain.  *See id.* at 1282.  If the claimant meets this burden, then in the second stage, the ALJ may

only reject the claimant's testimony if he makes specific findings that include clear and

convincing reasons for doing so.  *See id.* at 1283-1284.  If the ALJ discredits the claimant's

testimony regarding her symptoms and pain, the ALJ must make a credibility determination

coupled with findings sufficiently specific to permit the court to conclude that the ALJ did not

arbitrarily discredit claimant's subjective testimony.  *See Thomas v. Barnhart*, 278 F.3d 947, 959

(9th Cir. 2002).

Page 30 - OPINION AND ORDER

In weighing a claimant's credibility, the ALJ may consider the following factors: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between testimony and conduct, claimant's daily activities, work record, or testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The claimant's failure to seek treatment or failure to follow a proscribed course of treatment may also be considered in the ALJ's credibility determination. *See Smolen*, 80 F.3d at 1284. An ALJ may not discredit a claimant's testimony solely on the basis that it is not supported by objective medical evidence. *See id.* However, where the ALJ's credibility determination is supported by substantial evidence in the record, the finding cannot be questioned on review. *See Thomas*, 278 F.3d at 959.

In the present case, the ALJ provided clear and convincing reasons for rejecting portions of Coley's subjective testimony. First, the ALJ noted that the objective record provided little support for Coley's extensive subjective complaints. Tr. 42. The ALJ specifically made reference to the findings of Dr. Villanueva, who evaluated Coley as having only moderate limitations regarding her ability to do work-related activities. Tr. 431. In addition, a mini status check performed in 2004 was also within normal limits. Tr. 42. The ALJ also cited numerous occasions throughout Coley's medical history where medical test results were inconsistent with Coley's subjective complaints. Tr. 154, 179, 205, 224, 349, 424.

Second, the ALJ cited both Dr. Rawlins' and Dr. Villanueva's reports of exaggeration during the testing. Tr. 42. Dr. Villanueva assessed Coley's effort by empirical measurement and found that her performance fell below acceptable cut offs, stating that low points, specifically in

Page 31 - OPINION AND ORDER

memory, should be regarded with caution.  Tr. 437.  Dr. Rawlins noted that the validity of the

MMPI-2 Chronic Pain Program Interpretive Report should be interpreted with caution due to the

possibility of exaggeration.  Tr. 376.  Dr. Rawlins also stated that Coley's perception of her

physical complaints was exaggerated.  Tr. 377.

As discussed above, the ALJ erred in relying on exaggeration in Coley's performance

during Dr. Rawlins' assessment.  Dr. Rawlins also noted that Coley's perception of her physical

impairments was exaggerated.  Tr. 377.  Dr. Rawlins' finding that Coley had an exaggerated

perception of her physical health reflects negatively upon Coley's subjective credibility regarding

her level of physical impairment.  Thus, it was not an error for the ALJ to rely in part on Coley's

exaggerated perception of pain in discrediting her subjective representation of her physical

impairments.

Third, the ALJ noted that Coley's reported daily activities were inconsistent with the

marked limitations she testified to.  Tr. 42.  The ALJ cited Dr. Villanueva's record of Coley's

daily activities, which include cleaning her home, feeding animals, grocery shopping, cooking,

laundry, and other household responsibilities.  Tr. 434.  In addition, the ALJ cited Coley's

recorded earnings of $5,560 in 2004 and $7,742 in 2005 as demonstrating a capacity to work.  Tr.

42.

Fourth, the ALJ cited Coley's "extreme" use of marijuana, continued use of cigarettes,

and lack of exercise.  Tr. 42.  The ALJ cited numerous instances in the medical record where

Coley disregarded the treatment advice of her physicians by continuing to smoke, refusing to

exercise, and disregarding recommendations to seek counseling.  Tr. 154, 168, 176, 191, 210,

296.  The unexplained or inadequately explained failure to follow a proscribed course of

Page 32 - OPINION AND ORDER

treatment can cast doubt on the sincerity of the claimant's subjective testimony.  *See Fair v.*

*Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Here, the ALJ was correct to note that on numerous

occasions Coley's physicians prescribed treatment methods which she refused to follow.  Coley's

attorney asserts that Coley was unable to exercise due to pain associated with activity, but

evidence supporting this claim is scant in comparison to the extensive record of physicians

urging Coley to get exercise and increase daily activity.  Tr. 168, 170, 171, 187, 210, 296.  In

addition, the medical record contains numerous recommendations that Coley stop smoking

cigarettes.

       The reasons set forth by the ALJ for rejecting Coley's subjective symptoms and pain

constitute clear and convincing reasons that are supported by evidence in the record, sufficient to

support the conclusion that the ALJ did not arbitrarily reject Coley's testimony.  As the ALJ's

credibility determination was supported by substantial evidence in the record, his decision to

discredit Coley's subjective testimony should not be disturbed.

**IV.    Lay Witness Testimony**

       Coley argues that the ALJ erred in omitting significant language from his summary of the

testimony of lay witness Debra Messerli.  Specifically, Coley asserts that the ALJ omitted the

words "when she's not in too much pain," from the statement that Coley was "able to care for her

family, cook, do laundry, and garden."  Tr. 42, 98.  In addition, Coley argues that Messerli's

indication that she could carry on household chores for two to three hours a day does not equate

to the ability to engage in substantial employment activity.

       The omission of the words "when she's not in too much pain," is relatively insignificant in

relation to the final disability assessment.  In determining a claimant's ability to work, the ALJ is

Page 33 - OPINION AND ORDER

required to consider lay witness testimony.  *See Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d

1050, 1053 (9th Cir. 2006).  The ALJ satisfied this requirement, however, as shown in his

repeated reference to Messerli's testimony in his decision.  Tr. 42.  For example, the ALJ noted

that Messerli stated that pain kept Coley awake, that Coley was sometimes in too much pain to

focus on projects, that things were harder for Coley and took longer, that days were not

predictable for Coley due to pain, and that Coley led a painful life.  Tr. 42.  The AlJ's decision

therefore should not be disturrbed on the grounds that he failed to consider Messerli's lay witness

testimony.

## V.    Determination Regarding Listed Impairments

The Listing of Impairments describes impairments that the Commissioner considers "to

be severe enough to prevent an individual from doing any gainful activity," regardless of age,

education or work experience.  20 C.F.R. § 404.1525(a).  Thus, a claimant is disabled if his or

her impairment meets or is equivalent to a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).

An impairment is the equivalent of a listed impairment if the claimant establishes that he or she

presents each characteristic of the listed impairment.  *See Tackett v. Apfel*, 180 F.3d 1094, 1099

(9th Cir. 1999).  If a claimant suffers from multiple impairments, no one of which meets or

equals a listed impairment, the ALJ must evaluate whether the combination of impairments is the

medical equivalent of a listed impairment.  20 C.F.R. § 404.1523.

Here, Coley asserts that the ALJ did not properly evaluate the combined effect of her

medically verified impairments and failed to consider whether taken together they resulted in

limitations equal to listed impairments 12.04(B) and/or (C) (Affective Disorders) and 12.06(B)

and/or (C) (Anxiety Related Disorders).  20 C.F.R. pt. 404, subpt. P, App. 1.  Paragraph B of

Page 34 - OPINION AND ORDER

each listing is satisfied if an applicant's impairments result in at least two of the following four categories of restriction: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *See id.* In the alternative to satisfying the requirements of paragraph 12.04(B), an applicant may establish the equivalent of a listed affective disorder under paragraph 12.04(C) by presenting a medically documented history of chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or current history of one or more years of inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *See id.* In the alternative to satisfying the requirements of paragraph 12.06(B), an applicant may establish the equivalent of a listed anxiety disorder under paragraph 12.06(C) by establishing that her impairments result in her complete inability to function independently outside the area of her home. *See id.*

The ALJ found that Coley did not have an impairment or combination of impairments severe enough to meet or equal one of the listed impairments. Tr. 29. The ALJ found that Coley's mental impairments gave her only slight limitations on activities of daily living, moderate limits on social function, and moderate limits on concentration, persistence, and pace. Tr. 29.

Page 35 - OPINION AND ORDER

Further, the ALJ found that Coley had not had any episodes of decompensation and that there was no evidence of the (C) criteria for either listed impairment.  Tr. 29.

Coley asserts that Dr. Rawlins' determination that she had marked limitations in her social functioning and in her concentration, persistence and pace requires a finding of disability by virtue of meeting or equaling a Listing for 12.04(B) or 12.06(B).  In addition, Coley claims that Dr. Rawlins' assigned GAF score of 40, finding that Coley's classified impairment tends to be chronic, and the marked limitations, meets or at least equals the Listing for 12.04(B) and/or (C) and 12.06(B) and/or (C).

Contrary to Coley's assertion, the ALJ properly evaluated the conflicting medical opinions of Dr. Rawlins and Dr. Villanueva in determining that Coley's mental impairments did not meet or equal any listed impairments.  When medical records are inconsistent, it is the role of the ALJ to assess and resolve the conflicting medical evidence.  *See Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).  The ALJ had a specific and legitimate reason for rejecting Dr. Rawlins' assessment.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (rejecting treating physician's marked limitations that were inconsistent with claimant's daily activities).

In addition to the conflicting physician's opinions, other substantial evidence supports the ALJ's conclusion that Coley's impairments did not meet or equal listed impairments.  The ALJ noted a mini mental status evaluation in 2004, performed by Coley's then-treating physician Dr. Gardner, in which Coley scored within the average range considering her age and educational background.  Tr. 295.  Coley also had reported earning at a level of $5,560 in 2004 and $7,742 in 2005, which she denied having knowledge about.  Tr. 42.  Lastly, the ALJ found that the

Page 36 - OPINION AND ORDER

claimant's marijuana use was extreme and that her daily activities were not consistent with marked limitations.  Tr. 42.  As the ALJ had specific and legitimate reasons for discrediting Dr. Rawlins'  finding of marked limitations, he did not err in concluding that Coley's condition did not meet or equal any listed impairments.

The ALJ also properly found that Coley's physical impairments did not meet or equal a listed impairment.  The ALJ found that Coley's "fibromyalgia and possible carpal tunnel syndrome do not prevent her from carrying out all of the responsibilities for her household, raising her son, driving, and splitting wood." Tr. 29.  Although a treating physician's opinion generally is given the greatest level of deference, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate disability determination.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  As Dr. Gold's medical opinions concerning Coley's ability to engage in employment activities was properly given little weight, and the ALJ has pointed to the fact that Coley was able to engage in numerous daily activities that are inconsistent with listed physical limitations, the ALJ's finding that Coley's physical impairments do not equal a listed impairment was not in error.

Lastly, Coley claims that the ALJ failed to properly evaluate the combined effect of her medically verified impairments and consider whether taken together they resulted in limitations equal in severity to those specified by the listings.  The ALJ is required to consider whether the combination of the claimant's impairments is medically equal to any listed impairment.  *See Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995).

The ALJ found that the combination of Coley's impairments did not equal any listed impairments.  Tr. 29.  The ALJ acknowledged that Coley had fibromyalgia, possible carpal

tunnel syndrome, depression, an anxiety disorder, chronic pain syndrome, history of questionable

syncopal episodes, cannabis abuse, and probable personality disorder.  Tr. 29.  The complainant

is required to offer a theory as to how the combined effect of their impairments equal a listed

impairment.  *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).  Coley has not offered such a

theory and instead has relied on the properly discredited opinion of Dr. Gold, who assessed Coley

as disabled through a "complex symptomatology."  Tr. 382.  Coley has failed to point to any

evidence, besides properly discredited evidence, that shows that her combined impairments equal

a listed impairment.  The ALJ satisfied his duty to support his conclusion that the combined

effect of Coley's impairments did not meet or exceed a listed impairment by providing an in-

depth analysis of the medical record.  *See Gonzales v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir.

1990).  Therefore, the ALJ's conclusion that Coley's impairments did not meet or exceed a listed

impairment should not be disturbed.

**VI.    Hypothetical Posed to Vocational Expert**

At the hearing before the Administrative Law Judge on November 8, 2006, the ALJ asked

a vocational expert a series of hypothetical questions regarding the employment opportunities

available to a 47-year-old job candidate with no GED and physical/mental restrictions like those

applicable to Coley.  Tr. 493.  First, the ALJ asked the vocational expert about a candidate who

was "limited to lifting and carrying more than ten pounds frequently with an occasional 20

pounds maximum; [was] able to sit, stand or walk six hours each in an eight hour day, and [was]

limited to occasional ladder climbing and scaffold use."  Tr. 493.  In response, the vocational

expert answered that a such a person would be able to perform Coley's past employment

experience as a waitress.

The ALJ next added to the hypothetical the limitations that "the individual is unable to consistently follow detailed instructions; interact appropriately with the public, unless the contact with the public was occasional or superficial; that likewise she is unable to consistently interact with co-workers in a close, ongoing, cooperative, teamwork endeavor." Tr. 493. The vocational expert responded that employment as a waitress would be unsuitable for an individual with such limitations. Tr. 494. However, the expert identified other suitable employment fields such as a hand presser (light, unskilled, SVP 2, 19,300 jobs in the national economy and 300 in the regional economy), decorator in the leather products industry (light, unskilled, SVP 2, 19,000 jobs in the national economy and 500 in the regional economy), and assembler of small products (light, unskilled, SVP 2, 50,000 in national economy and 7,500 in the regional economy). Tr. 494.

An ALJ must present a hypothetical question to a vocational expert that is based on medical assumptions supported by substantial evidence in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) *citing Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). The hypothetical should be "accurate, detailed, and supported by the medical record." *Id.*, *citing Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989). "Conversely, an ALJ is not free to disregard properly supported limitations." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006).

Here, Coley argues that the ALJ erred in basing his decision on the opinion of the vocation expert based on an incomplete hypothetical which failed to accurately reflect Coley's condition. As discussed earlier, it was appropriate for the ALJ to give little weight to Dr. Gold's medical opinions regarding the severity of Coley's disabilities and their effect on her employment

capabilities.  In addition, the ALJ properly discredited Coley's subjective complaints regarding

the symptoms and pain related to her impairments.  Lastly, the marked limitations in Dr. Rawlins'

assessment were properly rejected.  As the ALJ was not in error in excluding Dr. Gold's opinion,

portions of Dr. Rawlins' assessment, and Coley's subjective complaints, the hypothetical formed

a complete representation of Coley's physical and mental limitations based on substantive

evidence in the record.

Coley further argues that the ALJ erred in disregarding the vocational expert's answers to

the questions presented by her attorney.  Coley asserts that these questions concerned her actual

condition as evidenced by the record.  First, the vocational expert answered that the marked

limitations would be of concern from a vocational perspective.  Tr. 495.  The expert testified that

Dr. Rawlins' report reflected a person who "would practically need to be in a sheltered

workshop."  Tr. 495.  The ALJ, however, properly disregarded these marked limitations for

reasons discussed above, and was not obliged to consider the vocational expert's response to

Coley's attorney's questions.

Second, Coley's attorney asked the vocational expert to consider the ALJ's hypothetical

with the addition of carpal-tunnel-related ailments.  Tr. 495.  The attorney stated that Dr. Kho's

report listed "just the right hand being mildly elevated, median nerve so, and the records make

some reference to some numbness and tingling," and then asked if any of the jobs listed required

fine hand manipulation.  Tr. 495-496.  The vocational expert responded that the small products

assembler position would require some fine hand manipulation.  Tr. 496.  The ALJ used the

vocational expert's testimony which listed jobs as a hand presser, decorator of leather products,

and assembler of small products as positions that an individual similar to the ALJ's hypothetical

Page 40 - OPINION AND ORDER

would be able to perform.  Tr. 44.

Where an ALJ errs in failing to properly discuss competent lay testimony favorable to the claimant, the court cannot consider the error harmless, unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could come to a different disability determination.  *See Stout,* 454 F.3d at 1056.  When the claimant cannot perform his or her past relevant work, the ALJ must show there is a significant number of jobs in the national economy the claimant is able to do.  *See Tackett v. Apfel,* 180 F.3d 1094, 1098-99 (9th Cir. 1990).  Here, the ALJ concluded that there were a significant number of jobs in several fields which Coley was capable of performing.  Even if the ALJ erred in finding that Coley was capable of performing the requirements associated with an assembler of small products, no reasonable ALJ would have come to a different disability determination, as neither leather decorator nor hand presser requires fine hand manipulation, and each job exists in significant numbers in the national and regional economies.

Third, Coley's attorney asked the vocational expert if the inability to remember and retain short, simple instructions would be of a concern for any one or two step job.  Tr. 496.  The vocational expert stated that "a person in order to be competitively employed needs to be able to learn the basic procedures of the job." Tr. 496.  Employers usually tolerate having to repeat instructions when someone is learning the job, but "they're less tolerant after a reasonable length of time with people needing to have short, simple instructions repeated." Tr. 496.  The attorney's proposed limitations, however, are inconsistent with the properly accepted opinion of Dr. Villanueva, who assessed Coley as having no limitations in the ability to understand and remember short/simple instructions, carry out short/simple instructions, understand and

Page 41 - OPINION AND ORDER

remember detailed instructions, and carry out detailed instructions.  Tr. 431.  Therefore, the ALJ

did not err in disregarding the vocational expert's response to Coley's attorney's hypothetical

questions.

## CONCLUSION

For the reasons set forth above, the decision of the Administrative Law Judge is affirmed.

A final judgment will be prepared.


Dated this 12th day of August, 2010.


   /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge